# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| STONE TRAVIS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 05 C 7292 |
| | ) | |
| MYRON GREENSPAN, LACKENBACH | ) | |
| SIEGEL, LLP, PETER STONE, and | ) | |
| ANTON VASYUKEVICH, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendants Peter Stone's ("Stone"), Anton Vasyukevich's ("Vasyukevich"), Myron Greenspan's ("Greenspan") and Lackenbach Siegel, LLP's ("Lackenbach") motions to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2) ("Rule 12(b)(2)") and 12(b)(3) ("Rule 12(b)(3)") or, in the alternative, motions to transfer. For the reasons stated below, we deny Stone's and Vasyukevich's motion to dismiss and grant Greenspan's and Lackenbach's motion to dismiss. We also grant Stone's and Vasyukevich's motion to transfer and deny as moot Greenspan's and Lackenbach's motion to transfer.

1

**BACKGROUND**

Plaintiff Stone Travis, Inc. ("STI") claims that in February 2004, Michael Travis ("Travis") responded to a newspaper advertisement placed by Stone, who was seeking financial backing for a business proposal related to "display organizers." (Compl. Par. 11). According to STI, after several telephone calls between Travis and Stone, Travis indicated that he lacked interest in the project but would meet with Stone and Stone's son Vasyukevich if they agreed to come to Chicago at their own expense. STI alleges that Stone and Vasyukevich came to Chicago in March 2004, to present their business proposal to Travis, at which point Travis, Stone and Vasyukevich agreed to enter into a business relationship "focusing on innovations pertaining to the sailing industry." (Compl. Par. 14). Travis, Stone, and Vasyukevich also allegedly decided at this point to form STI, which was incorporated on March 16, 2004.

STI claims that on April 20, 2004, Stone and Travis entered into a "Preliminary Agreement," and on April 30, 2004, Stone signed an employment agreement, in which he allegedly agreed "to the terms of the Agreements on Patents and Inventions," which had not yet been put into writing. (Compl. Par. 16-18). According to STI, the "Agreements on Patents and Inventions" referred to an oral agreement ("Oral Agreement") between Stone, Vasyukevich, and STI, in which Stone and Vasyukevich were to assign their personal intellectual property rights "in whole to STI in return for a two percent (2%) royalty" ("Assignments"). (Compl.

Par. 18). STI also claims that in May 2004, Travis, upon Stone's recommendation, retained for STI the legal services of Greenspan, who was an intellectual property attorney with Lackenbach.

STI alleges that Stone and Greenspan were responsible for transferring Stone's and Vasyukevich's intellectual property rights to STI, as was required under the Oral Agreement. According to STI, Stone and Vasyukevich assigned to STI their personal rights to several patents, patent applications, and unpatented innovations. However, according to STI, rather than assigning 100 percent of the rights in the intellectual property as required under the Oral Agreement, Stone and Vasyukevich only assigned 98 percent of their rights to STI. STI claims that it relied on Stone, Vasyukevich, and Greenspan to carry out the Oral Agreement. STI also claims that Greenspan was "working against STI's interests, and on behalf of Stone and Vasyukevich" when he failed to transfer 100 percent of Stone's and Vasyukevich's intellectual property rights to STI.

STI claims that in June 2004, Stone submitted papers to the U.S. Patent and Trademark Office that improperly exposed an STI innovation and that in December 2004, Stone refused to demonstrate an STI product to a prospective client. STI further claims that in February 2005, Stone got into "heated arguments" with STI board members and shareholders and became "rude and abusive" toward STI employees. (Compl. Par. 42). STI alleges that in March 2005, Stone refused Travis' request to have an attorney other than Greenspan handle STI's intellectual property

3

matters, at which point "Stone became secretive about STI's intellectual property [and] refus[ed] to share patent applications upon the request of Travis and other STI personnel." (Compl. Par. 43).

According to STI, Stone's relationship with STI continued to deteriorate and on May 14, 2005, Stone was suspended without pay. STI claims that in May and October 2005, Stone changed the correspondence address with the U.S. Patent and Trademark Officer for the Assignments to Vasyukevich's personal address in California. STI alleges that Stone is competing with STI for customers and using STI's intellectual property to do so. STI also alleges that Stone is doing this with the help of Greenspan, who "appears to be working with Stone as both a business partner and the legal representative of the joint business venture with Stone." (Compl. Par. 54).

In July 2005, Stone filed a lawsuit against Travis, Sharon Travis, and STI in the Southern District of New York on behalf of himself and other shareholders of STI ("New York Action"). STI filed the instant action on December 29, 2005, and included a claim for a breach of an oral contract against Stone and Vasyukevich (Count One), a claim of unjust enrichment against Stone and Vasyukevich (Count Two), a claim of conversion against Stone and Vasyukevich (Count Three), a claim of tortious interference with prospective economic advantage against Stone and Greenspan (Count Four), a claim of breach of fiduciary duty against Stone, Vasyukevich, and Greenspan (Count Five), a claim of fraud against Stone,

Vasyukevich, and Greenspan (Count Six), and a claim of legal malpractice against Greenspan and Lackenbach (Count Seven). Defendants now move to dismiss all counts for lack of personal jurisdiction or, in the alternative, to transfer the instant action.

## LEGAL STANDARD

Rule 12(b)(2) directs a court to dismiss a claim for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). For the purposes of such a motion to dismiss, the "court accepts all well-pleaded allegations in the complaint as true." *Hyatt Intern. Corp. v. Coco*, 302 F.3d 707, 712-13 (7 th Cir. 2002). If a defendant moves to dismiss pursuant to Rule 12(b)(2), "the court must decide whether any material facts are in dispute" in regard to personal jurisdiction and "[i]f so, it must hold an evidentiary hearing to resolve them, at which point the party asserting personal jurisdiction must prove what it alleged." *Id.* If the court finds that there are material facts in dispute, "the party asserting personal jurisdiction need only make out a prima facie case of personal jurisdiction," at least until the court decides to hold a hearing. *Id.*

Pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). In order to transfer a case pursuant to 28 U.S.C. § 1404(a), the transferor

court must first find that: 1) venue is proper in the transferor district, *see Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986)(stating that a court "in which suit is filed with proper venue" may transfer an action pursuant to § 1404(a)), and 2) venue is proper in the transferee district, *see* 28 U.S.C. § 1404(a) (stating that transfer can only be made to a district in which the action "might have been brought").

**DISCUSSION**

I.  Motions to Dismiss for Lack of Jurisdiction

Defendants move to dismiss the instant action for lack of personal jurisdiction. In a diversity actions such as this, the extent of the court's personal jurisdiction is governed by the law regarding personal jurisdiction of the state in which the federal district court sits. *Dehmlow v. Austin Fireworks*, 963 F.2d 941, 945 (7th Cir. 1992). The Illinois Long Arm Statute authorizes service of process both on in-state defendants and out-of-state defendants, and provides that "[a]ny person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, and, if an individual, his or her personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of such acts: . . . [t]he transaction of any business within this State; . . . [t]he commission of a tortious act within this State; [and][t]he making or performance of any contract or promise substantially

6

connected with this State . . . ." 735 ILCS 5/2-209. The Illinois Long Arm statute also provides that "[a] court may also exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." *Id.* Thus, in addition to the specifically authorized instances of personal jurisdiction included in the Illinois Long Arm Statute, Illinois law allows the exercise of personal jurisdiction over non-resident defendants if doing so comports with the due process provisions of the Illinois and federal constitutions. *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997).

A party is considered to have done business in Illinois if "it operates within the state, 'not occasionally or casually, but with a fair measure of permanence and continuity.'" *Michael J. Neuman & Associates, Ltd. v. Florabelle Flowers, Inc.*, 15 F.3d 721, 724 (7th Cir. 1994)(quoting *Cook Assocs., Inc. v. Lexington United Corp.*, 429 N.E.2d 847, 852 (Ill. 1981)). The Illinois Supreme Court has differentiated between the Illinois and federal constitutions. *See RAR*, 107 F.3d at 1276 (noting that the Illinois Supreme Court "has made clear that the Illinois due process guarantee is not necessarily co-extensive with federal due process protections"). However, the Illinois courts have given little guidance regarding how the two constitutions differ. *Id.* The Seventh Circuit, however, has concluded that there is "no operative difference between the limits imposed by the Illinois Constitution and the federal limitations on personal jurisdiction." *Hyatt Int'l Corp.*, 302 F.3d at 715 (citing RAR, 107 F.3d at 1276). Accordingly, we will proceed with an analysis of

7

federal constitutional limits on personal jurisdiction. *See RAR*, 107 F.3d at 1277 (choosing to "move on to address the federal constitutional issues directly").

Federal due process requirements determine when a court "may exercise personal jurisdiction over nonresident defendants." *Jennings v. AC Hydraulic A/S*, 383 F.3d 546, 549 (7th Cir. 2004)(explaining that the due process law is intended to "allow[ ] potential defendants to structure their contacts with different forums so as to plan where their business activities will and will not render them liable to suit"). A court may only exercise personal jurisdiction over a defendant if the defendant has "certain minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *RAR, Inc.*, 107 F.3d at 1277 (7th Cir. 1997)(quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

A. Stone and Vasyukevich

Stone and Vasyukevich argue that their contacts with Illinois are insufficient for them to be subject to personal jurisdiction in Illinois. Specifically, Stone and Vasyukevich argue that they are residents of New York and California respectively, and that they do not have systematic or continuous contacts with Illinois. However, Stone and Vasyukevich admit that Vasyukevich visited Chicago four times and Stone came to Chicago eight times since early 2004, to discuss the formation and operation of STI. (SV Mot. 6). Stone and Vasyukevich also admit that they had

8

several telephone conversations and e-mail communications regarding STI with Travis, who was in Illinois, which "involv[ed] New York, Chicago, and California." (SV Mot. 6).

The Seventh Circuit has stated that "[i]f the defendant is present in the forum state with regard to the conduct of business, the state has an interest in adjudicating a dispute that arises from this conduct, *Deluxe Ice Cream Co. v. R.C.H. Tool Corp.*, 726 F.2d 1209, 1214 (7th Cir. 1984), and that "[w]here a relationship is naturally based on telephone and mail contacts, these contacts can justify jurisdiction over a defendant." *Heritage House Rest., Inc. v. Continental Fund. Group, Inc.,* 906 F.2d 276, 281 (7th Cir. 1990). In the instant action, Stone and Vasyukevich chose to come to Illinois to conduct business on several occasions over a short period of time for the purpose of forming and operating STI. In fact, Stone and Vasyukevich came to Illinois to attend an annual shareholders' meeting for STI. (S. Resp. Ex. Par. 14). Stone's and Vasyukevich's contacts with Illinois were not random, and Stone and Vasyukevich could reasonably expect to be subject to the powers of the Illinois courts based on their contacts with the state. *See Daniel J. Hartwig Associates, Inc. v. Kanner*, 913 F.2d 1213, 1218 (7th Cir. 1990)(stating that "[i]n determining whether a defendant has purposefully availed himself of the benefits and protections of a given state, the defendant's conduct and contacts with the forum state must be such that he could reasonably anticipate being subjected to suit there"). The facts that support this determination are not in dispute, and a hearing on the issue of personal

9

jurisdiction is not necessary. Therefore, we find that Stone and Vasyukevich are subject to personal jurisdiction in Illinois, and deny Stone's and Vasyukevich's motion to dismiss to the extent that it was based on personal jurisdiction.

We also note that Stone and Vasyukevich argue that STI should be estopped from claiming diversity jurisdiction in this case in light of statements that STI made in filings in the New York Action. According to Stone and Vasyukevich, "STI filed a legal memorandum with the District Court in New York, arguing that there was no diversity in the New York Action because Plaintiff STI has its principal place of business in the City and State of New York." (SV Mot. 7). Stone and Vasyukevich argue that the position STI took in regard to its citizenship in the New York action is contrary to its claim in the instant action that it is an Illinois corporation.

STI admits that it did make such a representation to the New York District Court, but explains, as it did in a letter it later sent to the New York District Court judge, that STI closed its New York office in May 2005, a month before the New York Action was filed against STI, and relocated its principal place of business to Illinois at that time. STI has attached its approved corporate registration application from the Illinois Office of the Secretary of State, which is dated May 26, 2005. (S Ex. E, 1). STI also claims that it filed a motion to dismiss in the New York Action claiming that, on the face of the complaint, the plaintiffs had failed to properly establish diversity of citizenship. However, STI claims that once its attorneys learned that STI had moved its principal place of business to Illinois prior to the

filing of the New York Action, STI sent a letter to the New York District Court judge explaining their mistake and withdrawing that prong of their motion to dismiss. The facts presented to the court by the parties do not support the argument advanced by Stone and Vasyukevich relating to diversity jurisdiction in this case. Therefore, we deny Stone's and Vasyukevich's motion to dismiss to the extent that it is based on lack of diversity jurisdiction.

### B. Greenspan and Lackenbach

Greenspan argues that he is not subject to personal jurisdiction in Illinois because he never came to Illinois, is not licensed to practice law in Illinois, and never rendered legal services on behalf of STI in Illinois. Greenspan also argues that all of the Assignments "were prepared, signed and notarized in New York or California by Stone or Vasyukevich." (G. Rep. 3). STI argues that Greenspan discussed STI business with Travis on the telephone a number of times, and that on some of these occasions, Greenspan telephoned Travis in Illinois. According to STI, such telephone contacts are sufficient to establish personal jurisdiction.

The Seventh Circuit has held that "[i]t is well established that fraudulent 'mailings or telephone calls into Illinois by a non-resident, when coupled with an intent to affect Illinois interests, are a sufficient basis for jurisdiction' under the tortious acts provision of the long-arm statute." *McIlwee v. ADM Industries, Inc.*, 17 F.3d 222, 224 (7th Cir. 1994)(quoting *FMC Corp. v. Varonos*, 892 F.2d 1308, 1313

(7th Cir. 1990)). In the instant action, however, there is no evidence that Greenspan intended to affect Illinois interests with his telephone calls into Illinois. Instead, Greenspan was a New York attorney who was retained as counsel by a corporation that was headquartered, during the period of time relevant to this case, in New York. Greenspan did not solicit STI's, or even Travis', business in Illinois, and he never traveled to Illinois to do any business for STI. The fact that Greenspan discussed business with STI's CEO, Travis, while Travis was in Illinois does not mean that Greenspan intended to affect any Illinois interests. Greenspan's relationship was with STI and any harm that Greenspan committed was to STI, rather than to Travis. A handful of telephone calls on various topics is not enough to show that Greenspan "purposefully established minimum contacts with" Illinois. *Central States v. Reimer Express World Corp.*, 230 F.3d 934, 942-43 (7th Cir. 2000)(citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-76 (1985), and stating also that "the defendant must have purposefully availed itself of the privilege of conducting activities in the forum, invoking the benefits and protections of its laws")). Therefore, we find that Greenspan is not subject to personal jurisdiction in Illinois, and grant Greenspan's motion to dismiss.

    Similarly, Lackenbach's only connections to Illinois are through Greenspan, who is a partner at Lackenbach. Since Greenspan is not subject to personal jurisdiction in Illinois based on his contacts with the state, neither is Lackenbach subject to personal jurisdiction in Illinois. Therefore, we grant Lackenbach's motion

to dismiss.

II. Motions to Transfer

Stone and Vasyukevich have moved in the alternative to transfer this action to the Southern District of New York. Specifically, Stone and Vasyukevich argue that this action should be transferred because the instant action "involves the exact same issues as those raised in the New York Action" and because the New York Action was filed first. (SV Mot. 9).

If venue is proper in both the transferor and transferee districts, in deciding whether or not to transfer a case, the transferor court should then consider: 1) the choice of forum by plaintiff, 2) the convenience of the parties, 3) the convenience of the witnesses, and 4) the interest of justice. *Federal Deposit Ins. Corp. v. Citizens Bank and Trust Co. of Park Ridge, Ill.*, 592 F.2d 364, 368 (7th Cir .1979); *Coffey*, 796 F.2d at 220 n.3. The movant bears the burden of establishing that the transferee district is "clearly more convenient." *Coffey*, 796 F.2d at 220.

A. Venue

As is indicated above, in order to transfer this action to the Southern District of New York, pursuant to 28 U.S.C. § 1404(a), venue must be proper in both the Southern District of New York and in the Northern District of Illinois. Pursuant to 28 U.S.C. § 1391(a), "[a] civil action wherein jurisdiction is founded only on

13

diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought." 28 U.S.C. § 1391(a). In the instant action, a substantial part of the events involved in this case occurred in the Northern District of Illinois, including the creation of STI and the parties' decision to assign certain patent interests to STI. A substantial part of the events also occurred in the Southern District of New York, where STI was headquartered during the period of time in question in this action and where Stone, Greenspan, and Lackenbach are all located. Accordingly, we find that venue is proper in both the Northern District of Illinois and the Southern District of New York.

### B. STI's Choice of Forum

In considering whether to transfer an action, the court should afford some consideration to the plaintiff's choice of forum. *See Federal Deposit Ins. Corp.*, 592 F.2d at 368; *Heller Financial, Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir.1989). A transfer pursuant to 28 U.S.C. § 1404(a) should not merely "shift the convenience from one party to another," and the choice of a forum by a

plaintiff should not be "lightly . . . disturbed." *Warshawsky & Co. v. Arcata Nat'l Corp.*, 552 F.2d 1257, 1259 (7th Cir. 1977); *see also Heller Financial, Inc.*, 883 F.2d at 1294 (expressing concern that a transfer would merely shift the inconvenience to the plaintiff). However, whenever the plaintiff and defendant are in different states, as is the case in the instant action, there will inevitably be an inconvenience to one side. *In re National Presto Indus., Inc.*, 347 F.3d 662, 665 (7th Cir. 2003). When the potential inconvenience to the plaintiff and defendant are comparable, the plaintiff's choice of forum should prevail. *Id.*; *see also Heston v. Equifax Credit Info. Servs. LLC,* 2003 WL 22243986, at *1 (N.D. Ill. 2003)(stating that plaintiff's choice of forum is given less weight if the case has no "significant connection to the chosen forum").

In the instant action, STI has chosen to litigate the instant action in the Northern District of Illinois. STI has not, however, provided any compelling reasons why this action should remain in the Northern District of Illinois. STI states that "[t]he site of the material events is either predominately in Illinois, or at worst, equally divided among Illinois and New York, with relevant events occurring in both locations." (S. Resp. 11). In addition, STI states that it " expects the relevant documents to be small in number," (S. Resp. 11). Based on these statements, STI has not shown that the instant action has a compelling connection to Illinois and, thus, STI's choice of forum deserves little weight in the resolution of the instant motion.

### C. Convenience of the Parties and Witnesses

STI argues that it "expects Illinois to be more convenient for the majority of its witnesses." (S. Resp. 12). STI, however, has not stated who any of the witnesses located in the Northern District are, whereas Stone and Vasyukevich have provided a long list of its witnesses who are located in or near New York. (SV Rep. 7). STI also argues that "all the parties have already hired local counsel in Chicago . . . ." (S. Resp. 12). The fact that Stone and Vasyukevich have been required to hire counsel in Illinois, however, is not relevant to the convenience of the parties and witnesses in this case. Therefore, we find that the convenience of the parties and the witnesses supports transferring the instant action to the Southern District of New York.

### D. Interest of Justice

In determining whether the interest of justice supports transferring a case, a court may consider: 1) whether a transfer promotes the "efficient administration of justice," 2) whether the action could be consolidated with other actions in the transferee district, 3) whether the judges in the transferee district are more familiar with the pertinent state law, 4) whether jurors in a particular district have a "financial interest in [the] case," and 5) which district would have jurors that could "best apply community standards." *Coffey*, 796 F.2d at 220-21, 221 n.4. The court should also consider whether the transferee district has a lighter docket than the

transferor district. *In re National Presto Indus., Inc.*, 347 F.3d at 663.

The issues raised in the instant action are substantially similar to those raised in the New York Action. At issue in both cases is the relationship between STI, Travis, Stone, and Vasyukevich. In the instant action, STI claims, among other things, that Stone and Vasyukevich have breached the Oral Agreement and the Assignments, whereas the plaintiffs in the New York Action are seeking to rescind these agreements. Allowing these two actions to proceed separately could create inconsistent outcomes and would be a waste of judicial resources and, thus, we find that the efficient administration of justice requires transferring the instant action to the Southern District of New York, where it can be consolidated with the New York Action. *See Trippe Mfg. Co. v. American Power Conversion Corp.*, 46 F.3d 624, 629 (7th Cir. 1995)(stating that "[a] district court has 'an ample degree of discretion' in deferring to another federal proceeding involving the same parties and issues to avoid duplicative litigation"). Therefore, we grant Stone's and Vasyukevich's motion to transfer. We deny as moot Greenspan's and Lackenbach's motion to transfer.

## CONCLUSION

Based on the foregoing analysis, we deny Stone's and Vasyukevich's motion to dismiss and grant Greenspan's and Lackenbach's motion to dismiss. We also

grant Stone's and Vasyukevich's motion to transfer the instant action to the Southern District of New York and deny Greenspan's and Lackenbach's motion to transfer as moot.

 _____
 Samuel Der-Yeghiayan
 United States District Court Judge

Dated: May 25, 2006